**MOTOR TUG CHANCELLOR, INC., as former owner of the TUG CHANCELLOR, Libellant,**

v.

**The TUG HIRAM ABIFF, her engines, etc. and R. T. Towing, Inc., Respondent-Claimant.**

**RTC NO. 125 INC., as owner of the TANK BARGE RTC NO. 125, Libellant,**

v.

**MOTOR TUG CHANCELLOR, INC., as former owner of the TUG CHANCELLOR, Respondent-Claimant,**

v.

**R. T. TOWING and the TUG HIRAM ABIFF, Respondent-Impleaded.**

**Nos. 62 Ad 734, 62 Ad 993.**

United States District Court
S. D. New York.

Jan. 11, 1966.

Foley & Martin, New York City, for Motor Tug Chancellor, Stephen J. Buckley, New York City, of counsel.

McHugh & Leonard, New York City, for R. T. Towing, Inc. and Tug Hiram Abiff, Martin J. McHugh, New York City, of counsel.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

COOPER, District Judge.

This litigation involves a collision between the tug Chancellor and the tank barge RTC No. 125, then in tow of the tug Hiram Abiff, which occurred on December 18, 1961 in the vicinity of the American Oil Co. dock, Carteret, New Jersey.

The action first above captioned was instituted on July 13, 1962 by the filing of a libel to recover $17,000 in damages allegedly suffered by the tug Chancellor. By Pre-Trial Order filed March 18, 1964, damages claimed were reduced to $16,100, to be computed by a Special Commissioner.

The second action, initiated on September 25, 1962, seeks damages in the sum of $1200.00 alleged to have been sustained by the barge RTC No. 125 as a result of the aforesaid collision. Respondent herein impleaded R. T. Towing, Inc. and the tug Hiram Abiff.

These cases were consolidated for the purposes of trial by order of the Court at the commencement of trial (Tr. 11).[1]

In essence, libellant Motor Tug Chancellor, Inc. contends that: On the morning of December 18, 1961, its tug was proceeding light, southbound and at full speed in Arthur Kill. While in the vicinity of the Rahway River she reduced speed because of a sudden fog and navigated toward the nearby American Oil Co. dock. While so proceeding, the tug Hiram Abiff, with a barge in tow, suddenly loomed out of the fog and despite evasive maneuver on the part of the Chancellor, the moving tug Hiram Abiff negligently brought the barge RTC No. 125 into collision with it.

1. "Tr." followed by a number refers to the page of the Trial Transcript. "Ex." followed by a number refers to an Exhibit in evidence at trial.

It is respondent-claimant's contention that: There was no fog. Visibility, although possibly reduced somewhat by an industrial haze, was approximately one mile. Hiram Abiff and tow were lying stationary, dead in the water, well outside the channel limits. For no apparent reason the Chancellor eased out of the channel, turned hard to its starboard, then came hard left and collided with the barge.

These cases came on for trial before the Court on June 2, 1965. Trial was completed in one day. The parties thereafter submitted proposed findings of fact and conclusions of law.

Upon the trial record and proceedings had herein, the Court makes the following findings of fact and conclusions of law as required by Rule 46½, U.S.Sup.Ct. Admiralty Rules.

### FINDINGS OF FACT

1. Motor Tug Chancellor, Inc., a New York corporation, was the owner of the tug Chancellor at the time of the collision.

2. R. T. Towing, Inc., a New Jersey corporation, owns and operates the tug Hiram Abiff.

3. RTC No. 125 Inc., a New Jersey corporation owns and operates the barge RTC No. 125.

4. The tug Chancellor, approximately 77 feet long and 21 feet wide, when proceeding full ahead makes about 12 knots. (Libellant's Answers to Interrogatories Propounded by Respondent-Claimant, filed May 15, 1963, Answers 1(a), 1(b), 6(a)).

5. The tug Hiram Abiff is about 80 feet long and 22 feet wide (Tr. 61).

6. The tank barge RTC No. 125, a non-self-propelled vessel, is approximately 204 feet long and 40 feet wide (Tr. 61). At the time of the collision, she was loaded with a cargo of about 12,500 barrels of gasoline (Tr. 62).

7. The crew aboard each of the tugs consisted of a navigator, engineer and deckhand. The barge had two crewmen (Tr. 15, 61).

8. On December 18, 1961, at about 11:50 a. m., a collision occurred between the tug Chancellor and the barge RTC No. 125 which was then in tow of the tug Hiram Abiff in Arthur Kill at a point about 75 feet off the American Oil Company Steamship Dock located at Carteret, New Jersey (Ex. 1, Tr. 18–19, 26–27, 60–67, 72). Chancellor's port side, at about midships, collided with the port bow corner of the barge damaging both vessels. Hiram Abiff suffered no damage (Tr. 33, 35, 71).

9. Prior to collision on the morning of December 18, 1961 the Hiram Abiff had taken the barge RTC No. 125 in tow at Stapleton, Staten Island where the barge had received a cargo of approximately 12,500 barrels of gasoline from a ship (Tr. 60, 62). The tug was made up alongside the starboard side of the barge and the stern of the tug protruded some 5 feet beyond the stern of the barge. In this fashion the unit proceeded toward its destination, the American Oil Co. in Carteret, New Jersey (Tr. 62, 91).

10. When the unit reached its destination it "rounded-to" (a maneuver in which the flotilla made a half circle so as to reverse her heading) and was brought to a point where the barge's port side was parallel with and about 75 feet off the American Oil Co. dock. The tug master blew a signal to attract the attention of the American Oil Company's Dock Master for instructions as to the berth in which to place the barge. Receiving no response this signal was repeated in about one minute (Tr. 62–63, 120, 123, 128).

11. Shortly after the second signal was sounded, both the navigator and deckhand of the Hiram Abiff observed the Chancellor approaching. The Chancellor, without any barge in tow, had left Port Richmond at 11:00 a. m. that morning and ran at full speed making about 12 knots. She proceeded in Arthur Kill in a southerly direction toward her destination, Sewaren, New Jersey. When in the vicinity of the Rahway River, her navigator reduced speed to

half speed ahead (about 6½ knots) and eased the wheel to starboard, thus proceeding out of the channel and towards the American Oil Co. dock (Tr. 25). The Chancellor's navigator was then acting both as helmsman and lookout (Tr. 55–56). He first spotted the barge when less than 300 feet away. Suddenly, he put his wheel hard to starboard and crossed the bows of the Hiram Abiff and her tow. Therafter, he came hard left and collided with the port bow corner of the barge (Ex. 2, Tr. 29).

12. The northerly end of the American Oil Company's steamship dock is approximately 150–200 feet from the westerly edge of the navigable channel (Ex. 1). The Hiram Abiff and her tow were together approximately 62 feet in width and they were lying 75 feet off the dock. They were well outside the defined channel limits.

13. There appears to have been no other traffic in the area which in any way interfered with the navigation of the Chancellor.

■ 14. At the time of the collision the Hiram Abiff and tow were stationary, lying dead in the water, and awaiting docking instructions.

15. The weather was clear, the wind negligible, and the tide was at the last stage of the ebb and flowing in a southerly direction.

16. The Court found unconvincing the testimony of the Chancellor's Master that there was fog or any other condition which limited visibility to 100 feet (Tr. 141–42).[2] Although there was a slight industrial haze, visibility at that time was generally about one mile. However, due to a bend in the channel at Tremley Point, visibility of vessels proceeding in this vicinity is limited to about a quarter of a mile (Ex. 1).

17. Prior to the collision, the Hiram Abiff's deckhand was assigned to lookout duty. When the barge was ultimately landed against the dock it was his duty to handle the lines. He took a position about 10 feet aft of the port bow corner of the barge (Tr. 121, 99–103). The captain of the barge was also on deck at the time of the collision (Tr. 126). The lookout did not spot the oncoming Chancellor until it was about 75 feet away since his attention at that time was mainly focused in the direction of the barge's next move, viz., the dock.

## CONCLUSIONS OF LAW

A. This Court has jurisdiction over the subject matter and the parties herein pursuant to 28 U.S.C. § 1333.

■ B. The libellant Motor Tug Chancellor, Inc. has failed to sustain its burden of proof in establishing negligence on the part of the respondent or the tug Hiram Abiff in causing or contributing to the collision.

C. Neither the tug Hiram Abiff nor those in charge thereof nor respondent R. T. Towing, Inc. were guilty of any negligence in the operation, management and navigation of the Hiram Abiff; they did not cause or in any way contribute to the collision.

■ D. Under the circumstances herein, the requirement of a proper lookout pursuant to Article 29 of the Inland Rules of the Road, 33 U.S.C. § 221 was adequately met by the posting of Hiram Abiff's deckhand in the bow of the barge. We do not find that said lookout was insufficient or that he improperly performed his duties. Cf. Nassau Barge Corp. v. The Fred B. Dalzell, 180 F.2d 560 (2d Cir. 1959).

Libellant's reliance on Gulf Oil Corp. v. The Socony No. 16, 162 F.2d 869 (2d Cir. 1947), is without merit. That case may be distinguished by the fact that the tug's master did not even station a lookout, it was night time, there were occasional snow flurries which cut down visibility, and the master of the tug (be-

---

2. We also note the failure of libellant to call the deckhand on watch aboard the Chancellor or to explain his absence. Also unexplained is the absence of the report of the Chancellor's Master which he admits he submitted to the company (Tr. 51). The log of the Chancellor was not introduced (Tr. 50).

cause of the light condition of the barge) could see neither straight ahead nor to his own port.

E. The situation herein was one of "special circumstances" under Article 27 of the Inland Rules of the Road, 33 U. S.C. § 212. Gulf Oil Corp. v. The Socony No. 16, supra. In accordance with this provision, the Hiram Abiff and her tow were required and did proceed with due regard for all of the danger of navigation and collision.

F. Since no statutory fault on the part of the Hiram Abiff was shown, the rule of The Pennsylvania, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148, is clearly inapplicable here.

G. Under the circumstances herein, there was no duty on the part of the Hiram Abiff to sound any signal.

H. The collision was clearly caused by the negligence and inattention of the tug Chancellor. At the time, it was without a proper lookout. A highly maneuverable vessel, it was carelessly navigated outside the defined channel limits and brought into collision with the barge RTC No. 125 which was lying stationary, dead in the water, 75 feet off the dock. Circle Line Sightseeing Yachts v. City of New York, 283 F.2d 811, 814–15 (2d Cir. 1960).

## DISPOSITION

Based upon a quantitative and qualitative review of the entire record and the reasonable and natural inferences to be drawn therefrom:

1. Respondent R. T. Towing, Inc. is entitled to a decree dismissing the libel of Motor Tug Chancellor, Inc., with costs.

2. Libellant RTC No. 125 Inc. is entitled to a decree for the amount of damages sustained by it together with costs.

The Court appoints Roger J. Ziman, Esquire, 155 West 81st Street, New York, New York as Special Commissioner to determine the amount of damages.

3. R. T. Towing, Inc. and the tug Hiram Abiff are entitled to a decree dis-

missing the impleading petition with costs.

Settle order promptly on three (3) days notice.